And the correct way to say the client's name is what? Sir? The correct way to say the company's name is what? It's Delek Refining, Limited. All right. Thank you. You may proceed. Thank you, Your Honor. Good morning, Your Honors. You may please the Court. My name is Michael Bush, and I represent the appellant, Delek Refining, Limited. Delek respectfully represents that it should prevail in this appeal for three principal reasons. The arbitration award at issue in this case cannot have drawn its essence from the party's collective bargaining agreement because the arbitrator changed, altered materially the terms of that collective bargaining agreement in violation of its limited jurisdictional authority. Thus, the award can only rationally or logically, as the standard requires, draw its essence from the altered version of the collective bargaining agreement and not the one for which the parties bargained and agreed. Secondly, the portions of the collective bargaining agreement that the arbitrator ignored and refused to apply, thereby altering the agreement, were plain and unambiguous, requiring that they, both by the terms of the CBA itself and the controlling law, that they be applied in keeping with longstanding canons of contractual construction, as written, given their plain, everyday meaning, in conjunction with all related provisions. And third, on a different issue, Delek's challenge to the underlying award is and has always been grounded in the manner in which the arbitrator exercised his limited jurisdiction. It is not a challenge to the factual findings but only to the legal issues that expose his infidelity to the narrow jurisdiction granted to him by the parties and his failure to act within it. In that way, Delek's challenge is not frivolous and is not without justification. As such, it does not warrant the imposition of attorney's fees under the applicable standard. Turning back to the first point in the merits, Your Honor, I would start with the Court's decision back in Weber Aircraft, which, toward the end of its principal analysis, admonished that, particularly, I believe, in cases under Labor Management Relations Act Section 301, the specific facts of each case are more controlling than attempting to resolve the case by way of application of analogous cases. And I find that particularly true in this case because in all of the cases that we've cited to this Court, those that the union has cited and those upon which the district court relied, I've yet to find one that really matches the facts that we have here today. So I would urge the Court to base its decision on those unique facts alone. I believe the district court clung too tightly to the two cases that it most analogized this case to, those being Folger Coffee and Resolution Performance Products, both of which are distinguishable in significant ways from this case. But isn't this case actually a better case for a ruling like the one the arbitrator made requiring the use of regular employees? Because in Resolution Performance, my colleague wrote it. I don't want to say what it says. I'll defer to him. But there, there was basically a finding of ambiguity. The contract didn't really directly address it. And Folger's was even more to that vein. Here, Section 8.1 says, unless necessitated by extreme economic safety or environmental reasons, the company shall offer all this work to bargaining unit employees prior to utilizing contractors. And then there's another caveat, provided such use of bargaining unit employees does not result in excessive overtime. But it seems, doesn't it create a presumption that bargaining unit employees will get the work unless these extreme economic environmental issues exist or it's excessive overtime? I don't know that I would read it as being a presumption, Your Honor, not particularly when you read Section 8.1 in conjunction with the management rights clause that reserves everything that's not specifically limited in the agreement to the company to decide. But you don't think you had to prove before the arbitrator that this would have caused excessive overtime or extreme safety concerns if you had hired bargaining unit employees? I'm sorry. Was Your Honor's question that we did not have to prove that or that we didn't? Right. You're saying you didn't. Didn't you have to — I read it to say you had to prove that. You had to go before the arbitrator and say, yes, we know what 8.1 says, but this is a case of extreme safety or excessive overtime, so we were allowed to hire contractors first. Respectfully, while we're not challenging any fact-finding below, we did prove that. Our proof on both of those points, the opening and closing clauses of that sentence, the only record evidence was put on by the company, and it is unimpeached and unrefuted in any other part of the record. And to your point as well, the arbitrator made no finding that that was not the case. Right. He made no finding that there was not an extreme — It seems to me your argument is really more about a lack of findings than what all the contracts say is an ambiguous. Respectfully, Your Honor, I disagree. The reason I disagree — I'm trying to help you, but that's all right. Fine. No, no, no. But the factual findings are far more sacrosanct from an arbitrator than his jurisdictional mandate and a violation of that mandate. And that's what we're really arguing. He took, unlike the limitations that the Court found in Folger Coffee that were found in the collective bargaining agreement, this arbitrator took the opening and closing clauses of that sentence, read them out of the agreement. Those clauses create additional rights. Only after you — and he quotes the full Section 8.1 in the original ruling. You then asked for a clarification about does the remedy apply just during the preparation stage or during the actual work stage. You weren't challenging anything about, oh, this should have been excessive overtime or extreme safety. So then he does shorthand it. But that — you think that first clarification, where you're not even raising this particular issue, is telling on what his interpretation of the contract was? Ultimately, I do, Your Honor. And the reason is, at that point, we reserved the right to make the challenge that we ultimately made and the reason for which we're here today. At that point, there was an opportunity to resolve the matter. We reserved our rights. And we're trying to understand what the arbitrator was saying. The principal award wasn't sufficiently clear on that point. And only after we requested clarification did the arbitrator's real rationale and real mode or method of interpreting Section 8.1 become clear. When that became clear, we asked him again, you quoted just this central part of that sentence in 8.1 and effectively made it mandatory. You read out the opening clause. You read out the closing clause without any findings that neither applied and instead relied upon the party's intent without any finding of ambiguity and betrayed the plain meaning of those clauses and give them effect in keeping with the rest of the collective bargaining agreement. Counsel, let me ask you about how this was presented to the arbitrator. I did not find any written briefs or memos to the arbitrator. They may exist, and I want you to answer if there are. But we did find a transcript. And it doesn't seem to me, I mean, one of the troubling things about this is the arbitrator ignores the first and the last clauses of this first sentence of Article 8.1. So is it even under consideration? It should have been. They seem quite central. But what could we find in looking at the record that would tell us that the company actually pressed this upon the arbitrator that this is a matter of extreme economic safety, environmental reasons, or this would have been excessive overtime? We found a brief mention of it in the transcript. But where is there any real effort on the part of the company? And I'm not saying it's not there. I'm asking where do we find that this was squarely presented to the arbitrator that this is a case about the first clause or the last clause of that sentence, and that would make inexplicable his failure to deal with this and more explicable if it was not really pressed upon him? Well, Judge Southwick, we submitted post-arbitration briefs. Those should be in the record. Okay. Well, we'll look for those. We didn't see those in our initial look. Well, I'm just the transcribed record is at 118, and the principal ruling is at 170, and I don't have a pinpoint. You're saying 118 is where we would find post-arbitrator briefs? That's my site for the transcribed record of the hearing, and then his principal award was on page 170, presumably in those two, and also in our exhibits, I think, to the district court. The transcript's in the record, but I think he's asking if it was there then briefing that you'd submit to a court. Do you think that's in the record? I do believe that's in the record in our summary judgment. Was there anything prior to this that was transcribed? Is there anything that you presented to the arbitrator, here's what this is about, this is what you're going to be thinking about, here's the context to put what you're going to hear, or was that all just done after? That came after, in our opening statement during the hearing, those issues were presented, but the import of the opening and closing clauses of Section 8, or the sentence in 8.1 that we're focused on in this case, did not become as material until the arbitrator indicated that he was applying only the central clause and applying it in a mandatory way. Well, that's the only thing he needs to apply if you haven't pressed upon him that this is a safety, environmental, economic matter or this is an excessive overtime matter. And that's all I'm asking. Where do we find that you did that? Because we don't find it in the transcript. In the transcribed record, actually, Your Honor. There was testimony presented by the refinery manager, Louis Labella,  requiring to accomplish this vessel replacement had to be done by certified welders, which Dellick didn't have. That was taken into consideration in the planning. As to the overtime issue, he testified similarly about the number of contractors and the economic impact that paying overtime in keeping with what would otherwise have been the mandatory provision that the arbitrator cited would have cost the company. And so that's the testimony that we refer to as being unimpeached. And it was, frankly, not countered. No countervailing testimony was presented. So if your search is for something that should have made clear to him that the opening and closing clauses are at issue and why we did what we did, it's in the testimony within the arbitral record. Well, you need to put that testimony in context for the arbitrator. And we'll look to see if you did that. But keep going. I did see that testimony where your manager talks about the overtime. I mean, I read him to basically be saying, which is logical, that any time there's overtime, that's going to be an increased cost on the company. And in the second clarification you sought, that's when the arbitrator comes back and says, well, that position that was articulated by the witness for the company would mean that any overtime is automatically excessive overtime, and that's when he says that would read that out of the contract. Respectfully, Your Honor, that's not exactly what he said. What he said was — I know that's not the exact — what I said is how the district court interpreted it, right, how the magistrate judge interpreted it. But the real jurisdictional transgression that we're arguing about is the arbitrator, without any testimony, without any finding of ambiguity, without any testimony that those two clauses didn't apply. He found that that clause, the plain meaning, the plain words that that clause embodies couldn't be what you really meant in this language that you bargained with the union for, that both sides hard bargained for, the opening and closing clauses. Because your witness said any time there's overtime, we're not going to want to hire bargaining unit employees first because it's an added expense. And that ignores the word excessive. But that was exclusively within the scope of a major turnaround such as this. The parties have — if there's daily overtime to be worked and the company has the maintenance capacity to do that, the testimony was they do that. Maintenance employees also worked overtime on this turnaround, but in a different way. And that was never — the union was involved in the planning the whole way through and never was there an objection about the degree to which the company was going to use regular maintenance employees in the bargaining unit and pay them overtime. That seems inconsistent with the adjectives in the Article 8.1, which talks about extreme and excessive, and you're — so it seems to me it's more than just normal inconvenience. And normal inconvenience is whenever you need overtime or whenever there's a new project. This is talking about something extraordinary, which the arbitrator gets to interpret what all that means. And it seems to me your evidence is mainly dealing with there are certainly difficulties here, but the Article 8.1 is requiring more than just run-of-the-mill difficulties. And that is exactly the evidence that we put on, Your Honor. This was a project planned for, I believe, nine months, during which time everyone collaborated, union and company, in how it was going to be accomplished. The issue that we have with what the arbitrator did was he didn't find that — put it this way. If he would have found — based on the evidence, I find that it was not excessive. We wouldn't be here on that clause. If he would have found, I find that there was no extreme safety or environmental impact, I wouldn't be here. What he did was to say, because of the potential impact on future overtime, which was not before him, I find that the central clause in 8.1 is mandatory and it applies every time. To rob the parties of that bargained-for language is beyond his jurisdiction. It's beyond the very narrow jurisdiction given to him, which is to not alter the agreement in any way. I see that I'm out of time, Your Honors. Thank you. You'll have some more time later. Thank you. Good morning, Your Honors. May it please the Court, my name is Patrick Flynn. I represent the United Steelworkers, and I would agree with Judge Costa that I think this is a better case for enforcement of the arbitration award than any of the four cases that the parties have briefed and the lower courts have discussed. When you're dealing with a subcontracting issue, there's kind of a scale. You've got collective bargaining agreements that specifically restrict subcontracting with some language like we have here or some other. You have cases where there's no restriction on subcontracting, and you have cases where it's not even mentioned. And so those are the cases that we've dealt with here. And Judge Higginbotham was on, you know, two of those earlier cases, Folger and the raw-as-products case that's relied on by the lower courts, which were correctly decided. I think that in this particular case, the subcontracting clause did not give the company carte blanche right to subcontract. I mean, there are the two caveats that the Court has been discussing here this morning, the extreme examples and the excessive overtime examples. Those are restrictions on subcontracting. And then — Kennedy. Counsel, one of the things that concerns me, as my previous questions may raise, is it wasn't until the third effort to explain that the arbitrator even acknowledged, he does list Article 8.1 at the beginning of his first, I mean, list of the provisions of the CBA that are being disputed, I guess, or being relied on, perhaps principally by the company. But then he never discusses. It seems to me a much more defensible, but maybe still perfectly defensible now, I'm not saying otherwise, if the arbitrator had actually said the first clause doesn't apply because of X, the last clause doesn't apply because of Y. I got this evidence. And instead, I sort of worry about cases such as, I'm trying to see who the union is, Smith v. Transportation Workers, that says an arbitrator acts contrary to the CBA when he disregards the plain or ambiguous provisions. And, excuse me, I'm not saying this is unambiguous, but he does ignore it in his reasoning until the last effort to explain. Would you correct me on that? Isn't he ignoring these provisions until that last explanation? I don't believe he's ignoring these provisions. And I don't think that, I mean, certainly you can argue that. But you can certainly argue the opposite of that, because he did set forth the word not ignore. He leaves unexplained his reasoning as to those provisions until the last effort to clarify. I don't disagree with Your Honor on that. But I don't think there's any requirement that he explain. That's the point. When this Court looks at all the prior precedents established by this Court and by the U.S. Supreme Court, there is no requirement or obligation for the arbitrator to dot every I and cross every T and explain every clause and explain his reasoning. But we must be convinced, or at least in some way accept, that he did not disregard something. And he certainly didn't give it much regard in his explanation. The test is whether he is arguably interpreting the collective bargaining agreement and is it rationally inferrable from the collective bargaining agreement that the Supreme Court has established. And certainly that can be determined by reading his award. The two clarifications, I think the company really makes too much of those. And I think the lower courts made that same observation, because what the company is doing here is exactly what the Supreme Court said the courts should not be doing. They are attacking the reasoning of the arbitrator. They called his methodology analytic failure and disagreed with his interpretive methodology. And that's not the test for the courts to review the narrow, narrow review of an arbitration award. You just look to see if it's rationally inferrable from the collective bargaining agreement's terms. And I think that's clearly the case because there are restrictions in this particular subcontracting clause. It doesn't say the company shall have the exclusive right to subcontracting, period, like some of the earlier cases that overruled the arbitration awards. Here, there were exceptions. Kennedy. I'll use the word concede, because I don't like to lose anything by it. Do you accept or concede that this was presented in the way that we're talking about it now to the arbitrator? Did the company, at the time of the arbitration itself and in post-arbitration briefing, actually make these points about Article 8.1 that they're making now? I don't know about the company's brief, but the union's brief is in the record. We attached it to one of our briefs. It's record 218 to 225. That was the union's post-arbitration brief. And the union had always taken the position that the excessive economics or the extreme economic condition or excessive overtime was not a viable claim by the company. I don't recall specifically how much the company hammered on those two issues in the arbitration itself. But you would say it was before the arbitrator. This was not before the arbitrator. Oh, absolutely. Of course, if it was, and then you got a different — the company has a different problem. But it was before the arbitrator. I don't deny that it was before the arbitrator. The arbitrator recognized by citing, in my view, the entire clause in his original award, as the Court's pointed out here this morning. And just because he didn't talk about every paragraph doesn't mean he didn't consider it. Well, but if it was the key paragraph, the key language being asserted, and that's — I don't know if it was. But if it were, it's very odd that he didn't say, you know, even back of his hand, but something to explain why the key argument, not some incidental argument, not some footnote, we're here today because of the first and last clause of that article. I'm talking about the arbitrator. Right. But, anyway, we've got a review standard that you've explained to us of what we're looking for, but it does seem like an odd decision to me. Well — Unless this was an incidental matter for the arbitrator and not key to what the arbitration was about. But there is no requirement in the teachings of the Supreme Court and even this Court's following of those teachings that an arbitrator dot every I and cross every T and comment on every particular — Would he have to make findings, though? Could he have just said, I rule for the union, one sentence? Yes, he could. What support do you have for that? Well, I know there's case law to that effect. I don't have it off the top of my head, Your Honor. But I don't believe that there's any requirement of that. Now, you know, you would have to look at the collective bargaining agreement and see if there's some specific language that was clearly not followed. For example, in Delta Queen, that case was a careless case. And in that collective bargaining agreement, it specifically said carelessness was just cause for termination. And in that case, the arbitrator found no just cause. So if the arbitrator had just ruled for the union, the Court could determine by looking at that ruling and the collective bargaining language that clear language was ignored. Looking at this case, you can't determine that because there is no clear language. As the Court said, the word excessive is subject to interpretation. The word extreme is subject to interpretation. And the fact that the arbitrator didn't make a written interpretation of those, one cannot assume that he didn't consider them. It's just like in Delta Queen where the Court made reference to this inherent finding, this implicit finding. So I think the Court can take this arbitrator's award and say, well, we may or may not have agreed with the way he wrote it, but it is applicable to the collective bargaining agreement. It's an interpretation of the collective bargaining agreement. It may not be the one that you would advance, but as the Supreme Court said in the Oxford case, those awards can be good, bad, or ugly. And certainly the company has emphasized it's ugly to them, but that is not a ground for overturning the award. And we also think the attorney's fees provision was justified, and that's reviewed strictly on abuse of discretion. And the challenge here was not justified, because the company is just going into the arbitrator's rationale, and that's beyond the scope of review for enforcement of an arbitration award under the teaching of the Supreme Court and under this Court's teachings. Roberts. You don't have to use all your time. Does that cover what you want? Yes, sir. Good. Thank you. Your Honor, if I may, just to focus back briefly on the language in the second clarification that exposes the real issue that we see here. The arbitrator's own words at Record 186, to reconsider would have the effect of making Section 8.1 meaningless. Instead, what he did was render meaningless clauses that the parties bargained for, that he could have used plain, everyday meanings to construe and apply. He didn't do that. In doing so, he altered the agreement, which is an express violation of his jurisdictional mandate. Why isn't it a plausible reading that he was responding to your argument that there's always going to be overtime, so you can always use subcontracts? And he's saying, well, then this whole clause would be meaningless because there's always going to be overtime, so it would defeat the rest of 8.1. Because that's a right for which the company bargained and won. For excessive overtime, not for any overtime. No, right. But if the company finds, based on its operational planning, to use this example, its planning for this shutdown, that to pay every one of our maintenance workers overtime, whether they work or not, because we paid the contractors overtime, when is that ever going to be reasonable? Do you think the company has the absolute right to decide what excessive overtime is, that the CBA doesn't give the arbitrator that decision to make? The union's own witnesses admitted that the company has that right. Then there's no countervailing evidence in the record, Your Honor. That's why that piece of it, that clause of it, was so difficult for us to understand. Instead of seizing upon the evidence that was given to him, he decided to alter the agreement. And again, our argument is the conformity of what he did with his jurisdictional mandate, not his fact-finding, not the manner in which he went about this. I know it's a fine line to draw, but when the law is that all portions of the contract need to be applied together, when they're in one agreement and covering the same topics, and the law is that you can't read one piece without the other, and then someone does that, the arbitrator does that by virtue of simply discarding one of the critical pieces, it's impossible to see how that does anything to fortify the fidelity that undergirds this, the federal labor policy favoring arbitration. If all an arbitrator has to do is either, in saying so or not saying so, declare something ambiguous and invest then to himself the right to do whatever he wants, that destroys the principles that support federal labor policies favoring arbitration. It destroys the deference, the reasons for the deference that this Court supposedly needs to give to arbitrators' rewards. They're to pay the same fidelity to the rules of construction that a district court would. Or another judge would. When they betray the jurisdiction that the parties bargained for and gave to them, and in this case, it includes the word specifically, altering the agreement, which I don't know how we can find he didn't do, he's violated that jurisdiction and exposed his ruling to both judicial scrutiny and vacature. Is it the company's position that you also had unfettered discretion to decide on the first clause of Article 8-1, whether something was extreme in the economic or safety sense, and that that also is not reviewable by an arbitrator? I'm not saying that we had the exclusive right. I'm just wondering what's different about the word extreme and excessive on overtime. Why the two both are ambiguous to the extent you're talking about words that are indefinite that suggest a certain level of seriousness that somebody has to decide, and it seems to me a final decision by an arbitrator is at least a plausible reading of this. Well, and I would agree with Your Honor, if he would have construed and applied them, we would, again, not be here. What he did was different. He read that central sentence, that central clause as being mandatory without consideration of the rest because he found it — he found it — he found distasteful the fact that the company could declare overtime excessive. I don't know how — Why even have the arbitration? I mean, why did you agree to the arbitration if you declared overtime excessive? Why do we agree to this arbitration? No, why — well, yeah, this particular one, if you just said, no, we just declared it excessive overtime, and that's all — that's the ballgame, folks. Well, I'm sure we denied the grievance, but, you know — You didn't challenge that this was subject to the arbitrator's decision. No, no, no, no, Your Honor. We agreed to the arbitration clause. It's in the contract, and that's what we do. But to have an arbitrator — I see my time is — Finish your answer. I can't get past the fact, and the company can't get past the fact that simply by changing the language, the arbitrator reached this decision. That's not what he was empowered to do. And doing that betrayed every jurisdictional principle that he had in this case. But you — if I can ask one more quick question. If he'd said, no, there was no — the overtime was not going to be excessive, you'd still be saying that's wrong because he didn't have the power to make that decision. If he added that sentence to his award — I'm just trying to understand your — I'm sorry. If the arbitrator said in his award, I find the overtime would not have been excessive. Would not have been excessive? Right. And then still ruled against us? Well, right. If it wasn't excessive overtime, you don't get out of the main clause. No. If he would have made a factual finding contrary to what we — what we presented, no, that's his providence. Oh, okay. I thought you were telling me it wasn't his providence. I'm confused with that. It's not as unqualified, the right, as, say, Baird. But read with the Management Rights Clause, it's much, much closer than Folger Coffee and we believe warrants reversal of the judgment and rendering judgment in favor of Dellick. All right, then. Thank you, Your Honors. Thank you both. We'll call the last case of the morning.